UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Rocklin Unified School District, | No. 2:20-cv-01053-KJM-KJN |
| Plaintiff, | ORDER |
| v. | |
| J.H., by and through his guardians ad litem Claire Cordell and Jason Henkhaus, | |
| Defendants. | |

Plaintiff Rocklin Unified School District (the District) appeals an Administrative Law Judge's decision under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C.§ 1400, *et seq.*, finding the District denied defendant minor J.H. a free and public education, otherwise known as a FAPE. The District also moves to supplement the administrative record. For the following reasons, the motion to supplement the record is **granted** and the court **affirms the Administrative Law Judge's conclusions**.

**I.   BACKGROUND**

J.H. is a minor child who, in 2013, was diagnosed with anxiety and attention deficit hyperactivity disorder (ADHD). *See* Compl. ¶ 29, ECF No. 1; Administrative R. (AR) at 273–75, ECF No. 23 (notice of thumb drive lodged with court). Linda Ewing-Cobbs, Ph.D. recommended J.H. for a § 504 Support Plan, which has been in place since J.H. was in kindergarten. AR

1

1    at 273–75; Administrative Decision (AD) at 6, Compl. Ex. A, ECF No. 1.  J.H. attended public
2    elementary school in the Rocklin Unified School District for third and fourth grade during the
3    2016–2017 and 2017–2018 school years respectively.  AD at 7-8; Am. Excerpts of
4    Administrative R. (ER) 62–63, 95–96, ECF No. 29.  During third grade, J.H. succeeded
5    academically and displayed appropriate social and behavioral skills.  AD at 7.  In 2017, Sutter
6    Medical Group evaluated J.H. and diagnosed him with ADHD and anxiety.  *Id.*  However, J.H.
7    was not recommended for special education.  *Id.*

8    During J.H.'s fourth-grade year, his teacher Rebecca Cihak observed him struggling to
9    stay focused and organized.  *Id.*; ER 95–96.  She also noted he had trouble writing, and that he
10   was sometimes argumentative and anxious.  *Id.*  J.H. was bullied by some of his peers, which
11   culminated in a physical altercation resulting in J.H.'s suspension from school.  AD at 8; ER at
12   99–100.  Despite these challenges, J.H. continued to meet the academic standards for his grade
13   level.  AD at 8.

14   The District addressed J.H.'s anxiety and ADHD through a § 504 Support Plan.  ER
15   at 76–85.  J.H.'s § 504 Support Plan called for the following accommodations: preferential
16   seating, prompts at the beginning of a task and nonverbal prompts to stay on task, extra time to
17   complete assignments, reminders to take breaks and breathe when upset, and periodic deadlines
18   for long-term assignments.  Initial Assessment, AR at 217.  The plan also required teachers and
19   his parents to check-in with J.H. when he expressed anger or defiance, in order to discuss what
20   was affecting him.  *Id.*  The District also implemented a schoolwide program, the Positive
21   Behavior Intervention Systems structure, to "teach students the right way to behave" through the
22   use of "reward[s] . . . rather than us[e of] negative reinforcement" like detentions.  ER at 76–86,
23   162.

24   On March 8, 2018, J.H.'s mother Claire Cordell complained to the District about other
25   students bullying J.H.  ER 66–67; AR at 349.  The next day, Cordell requested an assessment to
26   determine J.H.'s eligibility for special education.  A few days later, the District convened a
27   meeting and provided Cordell with an assessment plan for IDEA evaluation.  ER at 80–81.  On
28   April 8, 2018, the school psychologist, Leanne Sublett, conducted an Initial Assessment.  In her

2

report, Sublett determined that J.H.'s ADHD and anxiety affected his alertness in class. ER at 27–28. Sublett recommended J.H. receive accommodations to address J.H.'s social and emotional challenges. *Id*. at 32–33. On May 16, 2018, the District discussed the recommendation with Cordell at an individualized education program (IEP) meeting. *Id.* at 59–61.

Soon thereafter, Cordell enrolled J.H. in Brookfield, a private school. J.H. did not receive special education services from Brookfield during the 2018–2019 school year, though he did receive informal support through his § 504 Plan. *Id.* at 126, 132–33. The rigorous course load at Brookfield exacerbated J.H.'s anxiety. *Id*.

In the summer of 2019, Dr. Lisa Pippin independently evaluated J.H.'s learning abilities. *Id.* at 87. The District then confirmed J.H.'s eligibility for special education based on his anxiety and ADHD, under the categories of "other health impairments" and a specific learning disability for his issues with written expression. AD at 5; ER at 34.

The IEP team offered J.H. a placement in the District where he would be in a general education classroom for 94 percent of his school day and receive specialized instruction and language and speech services. ER at 34, 49–51. Cordell did not consent to this IEP, *id.* 52, opting to keep J.H. at Brookfield. There is no record of J.H.'s receiving special education services from Brookfield during the 2019–2020 school year. *Id.* at 126, 132–33. "Brookfield does not have a special education program, does not provide special education and does not provide related services as defined under the IDEA" and "distinguishes itself as an accelerated and intensive academic program." Compl. ¶¶ 46–47.

On October 29, 2019, J.H. filed a hearing request with the Office of Administrative Hearings (OAH). AD at 1. In January 2020, a hearing was held before an Administrative Law Judge (ALJ), who issued a decision the following month. *Id*. The ALJ issued findings on sixteen issues. The ALJ found the District's determination that J.H.'s "other health impairments" qualified him for special education violated its "find child" duty under 20 U.S.C.

§ 1412(a)(3)(A),[1] which requires the District to identify children who may require special education services. The ALJ found J.H. should have been considered eligible for special education at the May 16, 2018 IEP meeting. AD at 17. The ALJ also found the District denied J.H. a free and public education (FAPE) in May 2018, when it did not find him eligible for special education. *Id.* at 56. In constructing a remedy, the ALJ found Cordell's placement of J.H. in private school for the 2018–2019 school year was proper and ordered the District to reimburse Cordell for tuition and daily transportation costs to and from Brookfield. *Id*. However, the ALJ clarified that as of August 21, 2019, J.H. was no longer entitled to reimbursement for Brookfield because the District was offering him an IEP and placement starting then. *Id.* at 54. The ALJ also ordered the District to provide 22 hours of counseling to J.H. *Id.* at 56. On April 29, 2020, the District moved for reconsideration *before* the ALJ, alleging newly acquired facts. AR at 1144. The ALJ denied the motion, finding the District did not establish that the OAH continued to have jurisdiction over the matter. *Id.* at 1182–83.

The District now appeals the ALJ's decision to this court, ECF No. 1, and moves to supplement the administrative record, Mot., ECF No. 12. The latter motion is fully briefed; the court submitted it without oral argument and grants it below. Opp'n, ECF No. 14; Reply, ECF No. 17; Min. Order, ECF No. 16. The parties have briefed the merits of the appeal. Opening IDEA Appeal Br. (Opening Br.), ECF No. 19; Resp. Br., ECF No. 24; Reply Br., ECF No. 26. The court heard oral argument on April 16, 2021, with Tilman Heyer appearing with Marcella L. Gutierrez on behalf of plaintiff and Geralyn Marie Clancy appearing for defendants.

## II.     MOTION TO SUPPLEMENT ADMINISTRATIVE RECORD

In considering a motion to supplement the administrative record, the court must "read the administrative record, consider the new evidence, and make an independent judgment based on a preponderance of [the] evidence and giving due weight to the hearing officer's determination." *Capistrano Unified Sch. Dist. v. Wartenberg,* 59 F.3d 884, 892 (9th Cir.1995). "Additional"

---

[1] "All children with disabilities residing in the State, . . . regardless of the severity of their disabilities, and who are in need of special education and related services, are identified, located, and evaluated . . . ." 20 U.S.C. § 1412(a)(3)(A)

evidence is that which supplements the existing record. *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1473 (9th Cir. 1993). The court must first start by reviewing "the record of the administrative proceeding" and then take care to not allow the addition of "such evidence [that] change[s] the character of the hearing from one of review to a trial *de novo*." *Id*. The "district court has discretion to admit additional evidence concerning relevant events occurring subsequent to the administrative hearing." *Id.* (internal quotation marks and citation omitted); *E.M. ex rel. E.M. v. Pajaro Valley Unified Sch. Dist. Off. of Admin. Hearings*, 652 F.3d 999, 1006 (9th Cir. 2011) ("[W]e have said that 'actions of the school systems . . . cannot be judged exclusively in hindsight . . . . But that exclusive use of hindsight is forbidden does not preclude consideration of subsequent events.' " (citations omitted)). In reviewing a motion to admit after-acquired evidence, "[t]he proper inquiry was whether the [evidence] was relevant, non-cumulative, and otherwise admissible." *Id*.

Here, the District seeks to supplement the record, providing evidence it says shows Cordell's decision to place J.H. at Brookfield was a personal, parental choice based on considerations other than any disability of J.H.'s, not a placement warranting reimbursement. Mot. at 4. Specifically, the District seeks to introduce evidence of the following: an IEP amendment from March 12, 2020, Cordell's lack of consent to the March 2020 IEP, and J.H.'s continued enrollment at Brookfield. Mot at 6. Additionally, the District seeks to introduce evidence that Cordell moved closer to Brookfield to facilitate J.H.'s continued attendance at school there. *Id*. The District argues this calls Cordell's credibility into question because she sold her house the same day she testified before the ALJ that she "put her house up for sale but took it back down." *Id*. Notably, the electronic copy of the Administrative Record provided to the court already contains all of the evidence the District points to in its motion to supplement, AR at 1144–81, because the evidence was filed as part of the District's motion for reconsideration presented to the ALJ. Mot. at 7–8; AR at 1144–1178.

To resolve the motion to supplement, the court considers whether the evidence is already in the record, which would mean it is not supplemental material. *Ojai*, 4 F.3d at 1473. "The . . . administrative record . . . is not necessarily those documents that the agency has compiled and

5

1  submitted as the administrative record. . . . [rather it is] all documents and materials directly or
2  indirectly considered by agency decision-makers and includes evidence contrary to the agency's
3  position." *Thompson v. U.S. Dep't of Lab.*, 885 F.2d 551, 555–56 (9th Cir. 1989) (internal
4  quotation marks, emphasis, and citation omitted); *Citizens to Pres. Overton Park, Inc. v. Volpe*,
5  401 U.S. 402, 420 (1971), *abrogated by Califano v. Sanders*, 430 U.S. 99, 97 (1977) ("[R]eview
6  is to be based on the full administrative record that was before the Secretary at the time he made
7  his decision."). In reviewing a matter based on a labor claim under the Energy Reorganization
8  Act, 42 U.S.C. § 5801 *et seq.*, the Ninth Circuit found evidence that was not in front of the
9  decision-maker before an initial order issues, but was submitted as part of a motion for
10 reconsideration, was properly part of the administrative record. *Thompson*, 885 F.2d at 556. In
11 that case, unlike here, the decision-maker considered the materials at issue "either directly or
12 indirectly" in deciding to deny the motion. *Id.*

13     Here, the ALJ dismissed the motion to reconsider on jurisdictional grounds in a two-page
14 decision, apparently without considering the merits of the reconsideration motion or the evidence
15 supporting it. *See* Mot. at 7–8. The evidence thus cannot be considered part of the administrative
16 record; it also is not cumulative of what already is in the record. The evidence is relevant and
17 material, however, as the District relies on it to challenge the appropriateness of Brookfield as a
18 placement and Cordell's reasons for selecting Brookfield. Moreover, the defendants are not
19 prejudiced by the inclusion of the proposed supplementary documents because they had advance
20 knowledge of this evidence given the underlying motion for reconsideration. Additionally, they
21 only argue they may be prejudiced if the court does not allow them to provide supplemental
22 evidence to bolster Cordell's credibility. Opp'n at 4. As evidenced by the court's ultimate
23 decision to affirm the ALJ's findings, the court does not find the plaintiff's additional evidence is
24 sufficient to destroy Cordell's credibility, such that supplemental evidence from defendants is
25 warranted. Therefore, the court grants the motion to supplement and the documents covered by
26 the motion are made part of the record the court considers in resolving the pending appeal on the
27 merits.

### III.  ADMINISTRATIVE APPEAL

The District seeks to overturn the ALJ's decision, which found the District had to reimburse Cordell for Brookfield tuition and the cost of transportation to the school for one year. Opening Br. at 1.  The District argues 1) it did not deny J.H. a FAPE, and 2) reimbursement is not an appropriate remedy because Brookfield was not an appropriate placement for J.H. and the equitable factors weigh against reimbursement.

#### A.  Legal Standard

Plaintiff, here the party disputing the administrative ruling, bears the burden of proof on review.  *Capistrano*, 556 F.3d at 910.  "[F]ederal courts accord considerably less deference to state administrative proceedings than they do in most instances of judicial review of . . . [other] agency actions[.]"  *Anchorage Sch. Dist. v. M.P.*, 689 F.3d 1047, 1053 (9th Cir. 2012) (citation and internal quotation marks omitted).  As it does here, the court is empowered to consider evidence beyond that included in the administrative record and grant relief it determines is appropriate based on a preponderance of the evidence.  *Id.*  "Complete de novo review, however, is inappropriate."[2]  *Amanda J. ex rel. Annette J. v. Clark Cty. Sch. Dist.*, 267 F.3d 877, 887 (9th Cir. 2001).  The court may not simply "ignore the administrative findings," *Ash v. Lake Oswego Sch. Dist., No. 7J*, 980 F.2d 585, 588 (9th Cir. 1992); rather, "due weight" must be given to the administrative decision, *Timothy O. v. Paso Robles Unified Sch. Dist.*, 822 F.3d 1105, 1118 (9th Cir. 2016).

The quality of the underlying administrative decision determines the amount of deference the District Court should afford it.  Greater deference should be given to the ALJ's findings when they are "thorough and careful."  *K.D. ex rel. C.L. v. Dep't of Educ., Hawaii*, 665 F.3d 1110, 1117 (9th Cir. 2011); *Hood v. Encinitas Union Sch. Dist.*, 486 F.3d 1099, 1104 (9th Cir. 2007);

---

[2] The parties propose that "*de novo* review is appropriate for the [c]ourt's review of the issue of Defendant's special education eligibility."  Reply at 7 (citing Opening Br. at 17; Resp. Br. at 7).  The court reads the case law as indicating de novo review at this stage is not warranted; rather, the cases counsel cites indicate that "[t]he Court of Appeals reviews *de novo* . . . conclusions of law" in cases before it.  *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1310 (9th Cir. 1987).

*see also Capistrano*, 59 F.3d at 891–92 ("[t]he hearing officer's report was especially careful and thorough, so the judge appropriately exercised her discretion to give it quite substantial deference"); *Ojai*, 4 F.3d at 1476 (ALJ's decision is entitled to "substantial weight" where "decision evinces his careful, impartial consideration of all the evidence and demonstrates his sensitivity to the complexity of the issues presented"); *G.D. v. Torrance Unified Sch. Dist.*, 857 F. Supp.2d 953, 963–64 (C.D.Cal.2012) (giving "substantial deference" to ALJ's decision that was not only "thorough and careful" but also "intensive and comprehensive"). However, courts retain the freedom to decide independently how much weight to give the ALJ's findings and conclusions. *Ashland Sch. Dist. v. Parents of Student R.J.*, 588 F.3d 1004, 1009 (9th Cir. 2009).

**B.     Analysis**

Here, the ALJ's decision deserves substantial deference because it is comprehensive, careful and intensive. The ALJ first presided over an eight-day hearing. AR 1186–3261. In her 57-page decision following hearing, the ALJ demonstrated an understanding of the dispositive issues before her by including thorough factual findings and her well-reasoned evaluation of both parties' arguments. *See generally* AD. Moreover, the parties do not dispute the factual findings, rather they only dispute whether the facts support the ALJ's legal conclusions. The court therefore turns to determining whether a preponderance of the evidence supports the ALJ's finding the District denied J.H. a FAPE for one year.

The purpose of the IDEA is to assure children with disabilities have access to "a free appropriate public education that emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A). As noted above, the school district has a "find child" duty to identify children who may require special education services. 20 U.S.C. § 1412(a)(3)(A). A school district can be put on notice a child has symptoms of a disability if a parent expresses concern or a professional issues an assessment. *Timothy O.*, 822 F.3d at 1119–21. Once on notice the school must assess "all areas of suspected disability." *Id*. at 1111 (citing 20 U.S.C. § 1414(b)(3)(B)). A child has a disability if they have one of the enumerated conditions or any "other health impairments" that require them to need "special education and related services." 20 U.S.C. § 1401(3)(A). "Other health impairments" encompasses having

"vitality, or alertness, including a heightened alertness to environmental stimuli . . . due to chronic or acute health problems such as . . . attention deficit hyperactivity disorder . . . [that] [a]dversely affects a child's educational performance." 34 C.F.R. § 300.8(c)(9). Once a child is identified as having a disability, the district must determine if the child is eligible for special education and related services because their needs cannot be met with simple modification of the general education program. 20 U.S.C. § 1401(2)(A); 34 C.F.R. § 300.8(a)(1); Cal. Educ. Code § 56026(a)(b). If the student is eligible, the school district must then create an IEP that is "reasonably calculated to enable the child to achieve passing marks and advance from grade to grade." *Bd. Of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 204 (1982).

Parents or other guardians who move their child to a private school "during the pendency of review proceedings, without the consent of state or local school officials," *Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 373–74, (1985), are entitled to reimbursement if the court finds: 1) the school district violated IDEA and 2) the private school placement was proper under the Act, *Florence Cty. Sch. Dist. Four v. Carter By & Through Carter*, 510 U.S. 7, 15–16 (1993). If both of these criteria are met, the court has "broad discretion" to "'grant such relief as the court determines is appropriate.'" *Id.* (quoting 20 U.S.C. § 1415(e)(2)). In shaping relief, the court ponders equitable considerations and "all relevant factors, including the appropriate and reasonable level of reimbursement that should be required." *Id.* ("Total reimbursement will not be appropriate if the court determines that the cost of the private education was unreasonable.").

### 1.     Denial of FAPE

The District argues the ALJ erroneously concluded the District denied J.H. a FAPE. The District insists that even if J.H.'s anxiety and ADHD qualify as disabilities within the meaning of the IDEA, these diagnoses did not qualify him for special education because he "was appropriately served" by general education interventions. Opening Br. at 1.

The question whether a child has received a FAPE triggers a two-step inquiry. First, the court considers whether "the State complied with the procedures set forth in the [IDEA.]" *M.P.*, 689 F.3d at 1054–55 (quoting *Rowley*, 458 U.S. at 206); *see J.L. v. Mercer Island Sch. Dist.*,

9

592 F.3d 938, 950-51 & n.10 (9th Cir. 2010) (recognizing *Rowley* "educational benefit" standard remains proper despite post-*Rowley* changes to education law). "Second, [the court] evaluate[s] [whether the IEP is] 'reasonably calculated to enable the child to receive educational benefits.'" *Id.* (quoting *Rowley*, 458 U.S. at 206–07). The second prong need not be addressed if the court identifies procedural inadequacies that result in the "loss of an educational opportunity, seriously infringes the parents' opportunity to participate in the IEP formulation process[,] or [that] causes a deprivation of educational benefits." *Id.* (internal quotation marks and citations omitted).

Here, Sublett, the school psychologist, assessed J.H. in April 2018. AD at 12–13. The ALJ found the District failed to meet its "find child" duty when it did not identify J.H. as qualified for special education based on "other health impairments" at the May 16, 2018 IEP meeting after "reviewing the test results and hearing the opinion of Ms. Sublett that student required special education services." *Id.* at 17. The ALJ further found the District denied J.H. a FAPE when it neither developed an IEP following the May 2018 meeting, nor kept supports in place through August 20, 2019. *Id.* The ALJ found J.H. established "his needs exceeded those that could be met through general education interventions and a 504 Plan." *Id.* at 15. In making this finding, the ALJ noted the District focused on his good academic performance to determine whether he was eligible for special education while discounting his need for mental health services and assistance with his interpersonal skills. *Id.* at 15–16. The District's general education interventions did not address J.H.'s heightened anxiety, which exacerbated his ADHD and contributed to negative interpersonal interactions. *Id.* at 16.

The ALJ's decision is entitled to deference, given the record as relevant here. At the time of his evaluation in April 2018, J.H. demonstrated a need for intervention based on his anxiety and ADHD. Although J.H. was still achieving some level of academic success at the time, academic success alone does not determine whether special education services are necessary. *See, L.J. by & through Hudson v. Pittsburg Unified Sch. Dist.*, 850 F.3d 996, 1004 (9th Cir. 2017). The District had notice of J.H.'s increased anxiety and "[h]is negative social interactions . . . [which] included [J.H.'s] retaliating against students with physical aggression, a suspension, negative peer interactions, and making a gun gesture with his fingers at school." AD at 16. His

1  behaviors indicated J.H.'s needs were not being met through general education intervention.  The
2  District argues the ALJ's findings were improper because J.H. was adequately served without an
3  IEP, and J.H.'s need for counseling services was not indicative of being eligible under the IDEA.
4  Opening Br. at 14.  But mental health services "specially-designed" for a student can be a special
5  service under IDEA.  *See L.J. by & through Hudson*, 850 F.3d at 1005.  The court will not disturb
6  the ALJ's findings.

### 2. Brookfield as a Placement

8  The District argues the ALJ's awarding reimbursement was not an appropriate remedy
9  because Brookfield was an inappropriate placement for J.H. for the 2018–2019 school year.  A
10 private school placement is proper if it "provides educational instruction specially designed to
11 meet the unique needs of a handicapped child, supported by such services as are necessary to
12 permit the child to benefit from instruction."  *C.B. ex rel. Baquerizo v. Garden Grove Unified*
13 *Sch. Dist.*, 635 F.3d 1155, 1159 (9th Cir. 2011).  "While a student's lack of progress is an
14 equitable consideration the district court has discretion to weigh, it is not a suitable basis for
15 determining whether a placement was proper."  *J.T. by & through Renee T. v. Dep't of Educ.*
16 *Hawaii*, 695 F. App'x 227, 228 (9th Cir. 2017) (unpublished) (citing *Adams v. Oregon*, 195 F.3d
17 1141, 1149 (9th Cir. 1999) (The "design[ ] and implement[ation]" of a program is a "more
18 pertinent question" than the amount of progress the student made)).  At this stage, "the district
19 court need only consider whether, at the time of enrollment, the unilateral placement was
20 'reasonably calculated' to meet the student's needs."  *Id*.  Reliance on hindsight is inappropriate.
21 *Adams*, 195 F.3d at 1149.  A parent's failure to select a private program previously approved by
22 the State is not a bar to reimbursement as parents rarely have a way of knowing whether the
23 private school meets state standards at the time they select it.  *Carter*, 510 U.S. at 14.
24 Furthermore, reimbursement is not "necessarily barred by a private school's failure to meet state
25 education standards."  Id.  "[Even if] the private school could not provide the student with all of
26 the necessary educational benefits, [ ] reimbursement was available nonetheless."  *C.B. ex rel.*
27 *Baquerizo*, 635 F.3d at 1159.
28 /////

The District's position is that reimbursement is inappropriate because Cordell chose Brookfield based on a desire for J.H. attend private school, not out of his need for special education services. The court does not disturb the ALJ's finding that Brookfield was an appropriate placement for the 2018–2019 school year. In May 2018, Cordell reasonably needed to find a placement quickly after the District denied J.H. an IEP. AD at 54. When Cordell made the decision, she knew the District would not provide J.H. with any services he was not already receiving, and that the social environment at his public school was exacerbating J.H.'s anxiety. *Id.* Meanwhile Brookfield had both a smaller student body and staff who assured her they could meet J.H.'s social and academic needs. AR at 3006 (testimony of Brookfield Principal Dr. Josephine Gonsalves). Brookfield also had "school-wide supports in place, such as a behavioral code and monthly team meetings" about students, both of which would benefit J.H. Resp. Br. at 10 (citing AR at 3011). While J.H. initially struggled under the rigor of Brookfield's curriculum, Opening Br. at 24, this hindsight view of his initial lack of progress is not determinative of whether the placement was proper. *See J.T. by & through Renee T.*, 695 F. App'x at 228. The court finds no reason to reverse the ALJ's determination that Cordell's decision to place J.H. at Brookfield for the 2018–2019 school year was reasonably calculated to meet his need for special education services related to his social and educational needs.

## IV.    CONCLUSION

The court **grants** the motion to supplement the administrative record, ECF No. 12.

The court **affirms the ALJ's decision in this matter**. The record supports the ALJ's decision that the District failed to provide J.H. with a FAPE, and the Brookfield placement was appropriate for the 2018–2019 school year such that defendants are entitled to the limited reimbursement the ALJ awarded them.

The Clerk is directed to close the case.

This order resolves ECF No. 12 & 19.

IT IS SO ORDERED.

DATED: February 14, 2022.

CHIEF UNITED STATES DISTRICT JUDGE